IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
CASE NO.

| | | |
|---|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY, | ) ) ) | 3:25-cv-00154-MGL |
| Plaintiff, | ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | ) ) | |
| J CORREA ELECTRICAL COMPANY, LLC | ) ) ) | |
| Defendant. | ) | |

**COMES NOW** Plaintiff Nationwide General Insurance Company ("Nationwide"), pursuant to Rule 57 of the Federal Rules of Civil Procedure and the provisions of 28 U.S.C. § 2201, and alleges and says:

**Preliminary Statement**

1. Pursuant to 28 U.S.C. § 2201, Nationwide seeks a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties under a policy of insurance issued by Nationwide with respect to claims for defense and indemnity asserted by Defendant J Correa Electrical Company, LLC ("J Correa") relating to an arbitration action brought by Flournoy Construction Group ("FCG") against J Correa ("Underlying Action") before a panel of arbitrators of the American Arbitration Association ("AAA").[1] Through this action, Nationwide seeks a declaration that it owes no duty to defend or indemnify J Correa in the Underlying Action.

---

[1] A copy of the operative claims in the Underlying Action, along with the exhibit referenced therein, is attached hereto as **Exhibit 1** and is incorporated by reference in this Complaint.

## Jurisdiction

2.     Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000.

## Venue

3.     This action properly lies in the U.S. District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this declaratory judgment action took place in this judicial district.  Specifically, the underlying lawsuit that forms the basis for this declaratory relief action took place in Richland County, South Carolina, which is located in this judicial district.  Furthermore, J Correa is a South Carolina, LLC, and the policy of insurance at issue in this action was issued to J Correa in South Carolina.

## Parties

4.     Nationwide General Insurance Company is an Ohio corporation, with its principal place of business in Columbus, Ohio, and is authorized to conduct business in the State of South Carolina.

5.     Upon information and belief, Defendant J Correa is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of South Carolina, with its principal place of business in Lexington County, South Carolina.

6.     Upon information and belief, the members of Defendant J Correa are, and at all times mentioned herein were, citizens of the State of South Carolina.

**Facts**

    **A. The Underlying Action**

    7.    Upon information and belief, J Correa is a South Carolina business that provides electrical contracting services.

    8.    FCG contracted with J Correa to perform work for the Lady Street Redevelopment Project ("the Project") located at 1310 Lady Street, Columbia, South Carolina.

    9.    Pursuant to the agreement between FCG and J Correa dated January 13, 2020, J Correa was to provide "electrical and fire alarm work" for "the Project," as more fully set forth in **Exhibit 1**.[2]

    10.    FCG filed the Underlying Action on December 29, 2023. A true and accurate copy of the Initial Statement of Claim ("ISC") is attached hereto as **Exhibit 1**.

    11.    On May 13, 2024, FCG filed its "Detailed Statement of Claims Against Respondent," which incorporates by reference the ISC and details its allegations against J Correa in the Underlying Action.  A true and accurate copy of the "Detailed Statement of Claims Against Respondent" ("DSC") is attached hereto as **Exhibit 2**.

    12.    FCG alleges in the ISC that J Correa "failed to timely furnish labor, services, and materials to the Project pursuant to the Subcontract.  [J Correa] also failed to provide work of acceptable quality. [J Correa] was put on notice of these deficiencies on numerous occasions but failed or refused to correct same."

    13.    The ISC asserts a single count against J Correa for "Breach of Contract."

    14.    The Breach of Contract Count alleges that J Correa's "failure to timely prosecute the work in terms of quantity and quality and failure to complete its scope of work and abandoning the Project constitutes a breach of Subcontract."

---

[2] The contract between FCG and J Correa is included as Exhibit A to the Underlying Action.

15. The DSC also alleges that J Correa "failed to timely furnish labor, services, and materials to the Project pursuant to the Subcontract" and alleges that J Correa attempted to perform its scope of work under the contract with inadequate manpower and a lack of management or supervision. The DSC further alleges that "[w]ithout proper or competent supervision CORREA's manpower largely worked where they felt like working without any sense of urgency."

16. The DSC alleges that J Correa also "failed to review the drawings, completely ignored the field conditions, and/or had incompetent supervision that lacked the ability to resolve the bus duct mis-ordering and mis-manufacturing issues." This allegedly resulted in issues with the procurement and installation of the bus duct, which resulted in additional damages to FCG.

17. The DSC also alleges that J Correa retained a subcontractor, Star Life Safety, to perform the fire alarm scope of work but "failed to provided Star with updated drawings and specifications," resulting in Star Life Safety having "to reorder materials and redo much of its work, which in turn lead to extra bills being sent to CORREA."

18. The DSC alleges that "FCG also discovered several areas of work that CORREA had performed defectively. By way of example, and not limitation: 1) FCG had to contract for the full rework of all units in the 10 and 6 story buildings due to home runs not being completed or run to the wrong units or missing; 2) FCG had to contract to redo the conduits in the basement to the main electrical room; 3) FCG had to contract to redo the power to the fire pump in the basement; 4) a generator was set backwards causing significant rerouting of conduits and wiring. Much of this work also included repairing damage to adjacent work that was necessary in order to effectuate the electrical repair work including drywall, backsplash, trim and paint."

19. FCG goes on to assert in the DSC that as a result of the various alleged breaches of contract by J Correa, FCG "was forced to supplement CORREA's labor force at its own

expense, both to prosecute the work forward in a good and workmanlike manner pursuant to the terms of the Subcontract and to correct the nonconforming work that CORREA refused to correct."

20. The DSC also asserts that J Correa has "refused to cure its nonperformance under the Subcontract" and has "refused to prosecute the work and refused to make repairs and refused to pay for the cost of the repairs." The DSC alleges J Correa "wrongly abandoned the Project on June 21, 2021."

21. As a result of this alleged failure, the Underlying Action alleges that FCG incurred damages in excess of the subcontract lump sum in the principal amount of $1,029,309.66.

22. Nationwide is currently providing a defense to J Correa in the Underlying Action pursuant to a reservation of Nationwide's rights to contest coverage.

**B. The Nationwide Policy**

23. Nationwide issued a commercial general liability policy of insurance, policy number ACP CG013200273173 ("the Policy"), to J Correa effective for the policy period of January 22, 2021 to January 22, 2022. The named insured was changed to "J Electric Company LLC" by a "Change of Declarations Endorsement" effective January 22, 2021. The named insured was again changed, this time back to "J Correa Electrical Company, LLC," by an additional "Change of Declarations Endorsement" effective March 22, 2021.

24. The Policy has been renewed for consecutive periods through January 1, 2024. The Policy includes a limit of $1,000,000 per occurrence and a general aggregate limit of $2,000,000, with a $2,000,000 products completed operations aggregate limit.

25. A true, accurate, and complete copy of the policy is attached hereto as **Exhibit 3**, and is incorporated by reference in this Complaint.

5

26.   The Policy contains the following exclusions and definitions:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)** The "bodily injury" or "property damage" occurs during the policy period;
   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any

    "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

  **a. Expected or Intended Injury**

"Bodily injury" or "property damage" extended or intended from the standpoint of the insured. . . .

  **b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or
    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
      **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j. Damage To Property**

"Property damage" to:

. . .

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

8

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";
**(2)** "Your work"; or
**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

27. The Policy also contains the following "Exclusion – Contractors – Professional Liability":

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
    b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph 3. below, professional services include:

    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

9

    b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

28. In addition to the above-referenced provisions, the Policy contains additional terms, conditions, exclusions, and provisions that may exclude or otherwise impact coverage, as more fully set forth in **Exhibit 3**.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

29. Nationwide restates, re-alleges, and incorporates by reference its allegations stated in paragraphs 1-17 as though fully set forth herein.

30. This action presents a real, actual, and justiciable controversy that is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will settle the controversy between them as to these insurance coverage issues.

31. The allegations and claimed damages in the Underlying Action allege do not fall within the insurance agreement of the Policy.

32. Among other things, the allegations and claimed damages in the Underlying Action do not constitute "bodily injury" or "property damage" . . . caused by an "occurrence".

33. Additionally, some or all of the allegations and claimed damages in the Underlying Action do not constitute "bodily injury" or "property damage" that took place during any policy period for the Policy.

34. Further, some or all of the claimed any "bodily injury" or "property damage" was, upon information and belief, known to the Defendant prior to one or more of the policy periods.

10

35. Additionally, a number of exclusions the Policy, including for "Expected Or Intended Injury"; "Contractual Liability"; "Damage To Property"; "Damage To Your Product"; "Damage To Your Work"; "Damage To Impaired Property Or Property Not Physically Injured"; "Recall Of Products, Work Or Impaired Property," and other exclusions operate to bar coverage for the Underlying Action under the plain and unambiguous language of those exclusions in the Policy.

36. The "Exclusion – Contractors – Professional Liability" also operates to exclude coverage for some or all of the claims in the Underlying Action.

37. Further, the Policy does not provide coverage for any period of time that J Correa was not an insured under the Policy.

38. The Policy also does not provide coverage to J Correa for any of the claims in the Underlying Action because the Policy contains other terms, conditions, and exclusions which otherwise preclude coverage for the claims asserted against J Correa in the Underlying Action.

39. Nationwide therefore requests that this Court declare the rights, obligations, and liabilities of the parties under the Policy with respect to the claims asserted in the Underlying Action. Specifically, Nationwide is entitled to a judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring and adjudging that it does not have an obligation to defend or indemnify J Correa under the terms of the Policy in connection with the Underlying Action.

**WHEREFORE,** Plaintiff Nationwide General Insurance Company respectfully prays the Court as follows:

1. That the Court declare and decree that the Policy does not afford coverage to J Correa for any of the claims in the Underlying Action;

11

2. That the Court declare and decree that Nationwide is not required to continue to defend J Correa in the Underlying Action;

3. That the Court declare and decree that Nationwide is not obligated in any way to indemnify J Correa under the Policy for any damages that J Correa may become legally obligated to pay as a result of the Underlying Action;

4. That the costs of this action be taxed against the Defendant;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court may deem just and proper.

This the 7th day of January, 2025.

/s/ Alexander E. Davis
Alexander E. Davis (Fed. ID. No. 11323)
David L. Brown (N.C. State Bar No. 35327)
*Pro Hac Vice* to be submitted
GOLDBERG SEGALLA LLP
701 Green Valley Road, Suite 310
Greensboro, North Carolina 27408
Telephone:    336.419.4900
Facsimile:    336.419.4950
Email:         aedavis@goldbergsegalla.com
              dbrown@goldbergsegalla.com

*Attorneys for Nationwide General Insurance Company*